**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

**RECEIVED**

DEC 0 5 2001

MICHAEL W. DOBBINS, CLERK
UNITED STATES DISTRICT COURT

*Richard MALEK*

_____

_____

**DOCKETED**

DEC 0 6 2001

(Enter above the full name
of the plaintiff or plaintiffs in
this action)

# 01C09324

Case No: _____
(To be supplied by the Clerk of this Court)

vs.

*City of Chicago Ill*
*Detective J. Zaltoris*
*Detective R. Trark*
*Detective L. Rolston*
*Detective T. Coughlin*
*Detective K. Boudreau*
*Detective W. Swiar*
*Detective J. Van Beveren*

**JUDGE ZAGEL**
MAGISTRATE JUDGE KEYS

*Jury Trial Demanded.*

_____

_____

(Enter above the full name of ALL
defendants in this action. Do not
use "et al.")

**CHECK ONE ONLY:**

✓      **COMPLAINT UNDER THE CIVIL RIGHTS ACT, TITLE 42 SECTION
1983 U.S. Code** (state, county, or municipal defendants)

_____      **COMPLAINT UNDER THE CONSTITUTION ("BIVENS" ACTION),
TITLE 28 SECTION 1331(a) U.S. Code** (federal defendants)

_____      **OTHER** (cite statute, if known)

*BEFORE FILLING OUT THIS COMPLAINT, PLEASE REFER TO "INSTRUCTIONS FOR
FILING." FOLLOW THESE INSTRUCTIONS CAREFULLY.*

I.  **Plaintiff(s):**

   A.   Name: RicHARd MALEK

   B.   List all aliases: N/A

   C.   Prisoner identification number: # 1999 009 3812

   D.   Place of present confinement: Cook CouNTy JAiL

   E.   Address: 2600 So. CALiFORiNA , CHicAgo ILL 606 08

   (If there is more than one plaintiff, then each plaintiff must list his or her name, aliases, I.D. number, and current address according to the above format on a separate sheet of paper.)

II.  **Defendant(s):**
   (In **A** below, place the full name of the first defendant in the first blank, his or her official position in the second blank, and his or her place of employment in the third blank. Space for two additional defendants is provided in **B** and **C**.)

   A.   Defendant: SEE ATTACHEd SHEETS

        Title:

        Place of Employment:

   B.   Defendant:

        Title:

        Place of Employment:

   C.   Defendant:

        Title:

        Place of Employment:

   (If you have more than three defendants, then all additional defendants must be listed according to the above format on a separate sheet of paper.)

2

II. DEFENDANTS;

A.) CITY OF CHICAGO IS A MUNICIPALITY OF THE STATE OF ILLIONIS AND OWNS, OPERATES MANAGES, DIRECTS AND CONTROLS THE CHICAGO POLICE DEPARTMENT WHICH EMPLOYS THE NAMED POLICE OFFICER DEFENDANTS.

B.) J ZALTORIS IS AND WAS AT ALL TIMES RELEVANT TO THIS ACTION AN DETECTIVE OF THE CHICAGO POLICE DEPARTMENT, BADGE # 21219. UPON INFORMATION AND BELIEF HE IS STATIONED AT AREA ONE POLICE STATION LOCATED AT 5100 SO WENTWORTH AVE, CHICAGO ILLIONIS HE IS BEING SUED IN BOTH HIS INDIVIDUAL AND OFFICAL CAPACITIES.

C.) R. TRLAK, BADGE # 20137, IS AND WAS AT ALL TIMES RELEVANT TO THIS ACTION AN DETECTIVE OF THE CHICAGO POLICE DEPARTMENT. UPON INFORMATION AND BELIEF HE IS STATIONED AT AREA ONE POLICE DEPARTMENT LOCATED AT 5100 SO WENTWORTH AVE, CHICAGO ILLIONIS HE IS BEING SUED IN BOTH HIS INDIVIDUAL AND OFFICAL CAPACITIES.

D.) L. ROLSTON, BADGE # 20101, IS AND WAS AT ALL TIMES RELEVANT TO THIS ACTION AN DETECTIVE OF THE CHICAGO POLICE DEPARTMENT. UPON INFORMATION AND BELIEF HE IS STATIONED AT AREA ONE POLICE STATION, LOCATED AT 5100 SO WENTWORTH AVE CHICAGO ILLIONIS,

HE IS BEING SUED IN BOTH HIS INDIVIDUAL AND OFFICIAL CAPACITIES.

E.) T. COUGHLIN, BADGE # 20983, IS AND WAS AT ALL TIMES RELEVANT TO THIS ACTION AN DETECTIVE of THE CHICAGO POLICE DEPARTMENT, UPON INFORMATION AND BELIEF HE IS STATIONED AT AREA ONE POLICE STATION LOCATED AT 5100 So WENTWORTH AVE, CHICAGO ILLIONIS. HE IS BEING SUED IN BOTH HIS INDIVIDUAL AND OFFICIAL CAPACITIES.

F) K. BOUDREAU, BADGE # 20435, IS AND WAS AT ALL TIMES RELEVANT TO THIS ACTION AN DETECTIVE of THE CHICAGO POLICE DEPARTMENT, UPON INFORMATION AND BELIEF HE IS STATIONED AT AREA ONE POLICE STATION, LOCATED AT 5100 S. WENTWORTH AVE, CHICAGO ILLIONIS. HE IS BEING SUED IN BOTH HIS INDIVIDUAL AND OFFICIAL CAPACITIES.

G.) W. SUILAR, BADGE # 20153, IS AND WAS AT ALL TIMES RELEVANT TO THIS ACTION AN DETECTIVE of THE CHICAGO POLICE DEPARTMENT, UPON INFORMATION AND BELIEF HE IS STATIONED AT AREA ONE POLICE STATION, LOCATED AT 5100 So WENTWORTH AVE, CHICAGO ILLIONIS. HE IS BEING SUED IN BOTH HIS INDIVIDUAL AND OFFICIAL CAPACITIES.

H.) J. VAN BEVEREN, BADGE # 21219, IS AND WAS AT ALL TIMES RELEVANT TO THIS ACTION AN DETECTIVE OF THE CHICAGO POLICE DEPARTMONT, UPON INFORMATION AND BELIEF SHE IS STATIONED AT AREA ONE POLICE STATION LOCATED AT 5100 So

WENTWORTH AVE, CHICAGO ILLIONS, SHE IS BEING SUED IN
BOTH HER INDIVIDUAL AND OFFICIAL CAPACITIES.

2-C

III.   **Exhaustion of Administrative Remedies**

You are required to exhaust all your available administrative remedies before bringing an action in federal court.

A.   Is there a grievance procedure available at your institution?

YES ( ✓ )  NO ( )   If there is no grievance procedure, skip to F.

B.   Have you filed a grievance concerning the facts in this complaint?

YES ( )   NO (X)

C.   If your answer is **YES**:

1.   What steps did you take?

N/A

2.   What was the result?

N/A

3.   If the grievance was not resolved to your satisfaction, did you appeal?

What was the result (if there was no procedure for appeal, so state.)

N/A

D.   If your answer is **NO**, explain why not:

FILED A COMPLAINT WITH office of PROFESSIONAL STANDARDS, 1130 So WABASH, CHICAGO ILLINOIS 60604

E.     Is the grievance procedure now completed?   YES ( )   NO (✗)

F.     If there is no grievance procedure in the institution, did you complain to authorities?   YES (✗)   NO ( )

G.     If your answer is **YES**:

1.     What steps did you take?

FILED A COMPLAINT WITH OFFICE OF PROFESSIONAL STANDARDS, 1130 SO WABASH, CHICAGO ILL 60604

2.     What was the result?

NO RESPONSE FROM OPS AT THIS TIME.

H.     If your answer is **NO**, explain why not:

N/A

**IV.** List ALL lawsuits you (and your co-plaintiffs, if any) have filed in any state or federal court (including the Central and Southern Districts of Illinois):

A.     Name of case and docket number: *N/A*

_____

B.     Approximate date of filing lawsuit: *N/A*

C.     List all plaintiffs (if you had co-plaintiffs), including any aliases: *N/A*

_____

_____

_____

D.     List all defendants: *N/A*

_____

_____

_____

E.     Court in which the lawsuit was filed (if federal court, name the district; if state court, name the county): *N/A*

F.     Name of judge to whom case was assigned: *N/A*

_____

G.     Basic claim made: *N/A*

_____

H.     Disposition of this case (for example: Was the case dismissed? Was it appealed? Is it still pending?): *N/A*

_____

_____

H.     Approximate date of disposition: *N/A*

**IF YOU HAVE FILED MORE THAN ONE LAWSUIT, THEN YOU MUST DESCRIBE THE ADDITIONAL LAWSUITS ON ANOTHER PIECE OF PAPER, USING THIS SAME FORMAT. REGARDLESS OF HOW MANY CASES YOU HAVE PREVIOUSLY FILED, YOU WILL NOT BE EXCUSED FROM FILLING OUT THIS SECTION COMPLETELY, AND FAILURE TO DO SO MAY RESULT IN DISMISSAL OF YOUR CASE. CO-PLAINTIFFS MUST ALSO LIST ALL CASES THEY HAVE FILED.**

V. **Statement of Claim:**

State here as briefly as possible the facts of your case. Describe precisely how each defendant is involved. Include also the names of other persons involved, dates, and places. **Do not give any legal arguments or cite any cases or statutes.** If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. (Use as much space as you need. Attach extra sheets if necessary.)

1) NOW COMES THE PLAINTIFF RICHARD MALEK TO BRING CHARGES AGAINST DEFENDANTS.

2) DEFENDANTS HAVE SUBJECTED PLAINTIFF TO A PATTERN OF CONDUCT CONSISTING OF ILLEGAL DETENTION, INTIMIDATION, THREATS, PHYSICAL HARM, COERCION, PSYCHOLOGICAL TERROR IN DENIAL OF HIS RIGHTS, PRIVILEGES AND IMMUNITIES GUARANTEED PLAINTIFF BY THE CONSTITUTION OF THE UNITED STATES. CONSPIRACY AND COVER UP BY FILING A FALSE POLICE REPORT.

3) THIS SYSTEMATIC PATTERN OF CONDUCT CONSISTS OF A LARGE NUMBER OF INDIVIDUAL ACTS VISTED ON PLAINTIFF BY MEMBERS OF THE CHICAGO POLICE DEPARTMENT. DEFENDANTS ACTS HAVE NO JUSTIFICATION OR EXCUSE IN LAW AND ARE INSTEAD GRATUITOUS, ILLEGAL AND IMPROPER.

4) AS A RESULT PLAINTIFF HAS LOST HIS JOB, HIS PLACE OF RESIDENCE ALL HIS WORLDLY POSESSIONS IN SAID RESIDENCE, HIS AUTOMOBILE, HAS HAD HIS YOUNG SON MATTHEW MALEK TAKEN AWAY FROM HIM BY THE ILLINOIS DEPARTMENT OF CHILDREN AND FAMILY SERVICES. PLAINTIFF IS BEEING HELD AS AN DETAINEE AT THE COOK COUNTY JAIL IN A MEDICAL DIVISION (DIVISION 9-1A) AND HAS BEEN ON MEDICATION FROM

THE TIME (DEC 8 1999) UNTIL THE PRESENT DUE TO THE DEFENDANTS CONCERTED UNLAWFUL AND MALICIOUS PHYSICAL AND PSYCHOLOGICAL ABUSE.

5) DEFENDANTS INTENTIONALLY OR WITH DELIBERATE INDIFFERENCE AND CALLOUS DISREGARD OF PLAINTIFFS RIGHTS.

THEREFORE THE CHARGES ARE AS FOLLOWS:

COUNT 1) ILLEGAL DETENTION WITHOUT PROBABLE CAUSE OR WARRANT.

COUNT 2) ILLEGAL SEARCH OF RESIDENCE WITHOUT WARRENT OR PERMISSION OF PLAINTIFF.

COUNT 3) DENIED PLAINTIFFS RIGHT TO AN ATTORNEY, DEFENDANTS DISREGARD OF PLAINTIFFS INNUMERABLE REQUESTS TO ARANGE FOR SAID ATTORNEY.

COUNT 4) DENIAL OF PLAINTIFFS RIGHTS, PRIVILEGES AND IMONUNITIES GUARANTEED BY THE CONSTITION OF THE UNITED STATES.

COUNT 5) PLAINTIFF WAS SUBJECTED TO A PATTERN OF CONDUCT CONSISTING OF ILLEGAL DETENTION, INTIMIDATION, THREATS, COERCION PHYSICAL HARM AND PSYCHOLOGICAL TERROR.

COUNT 6) PLAINTIFF WAS HELD INCOMMUNICADO FOR 62 HOURS

COUNT 7) PLAINTIFF WAS IN ISOLATION DENIED PROPER FOOD, USE OF RESTROOM, AND SLEEPING ARANGMENTS

COUNT 8) PLAINTIFF SUBJECTED TO CRUEL AND UNUSAL PUNISHMENT DUE TO THE BRUTAL ASSUALT BY DEFENDANTS.

COUNT 9) THE DEFENDANTS ALLEGED CONSPIRACY AND COVER UP BY FILING A FALSE POLICE REPORT CAUSING PLAINTIFF TO BE INCARCERATED.

COUNT 10) PLAINTIFF WAS DENIED DUE PROCESS OF LAW; PLAINTIFF WAS DURING THE TIME OF ILLEGAL DETENTION 54 HOURS

A) WAS NEVER BROUGHT BEFORE A JUDGE, COURT OR MAGISTRATE.

B) WAS NEVER CHARGED WITH A CRIME.

C) WAS NOT INFORMED OF HIS RIGHTS TO AN ATTORNEY.

D. WAS NOT INFORMED OF HIS PRIVILEGE AGAINST SELF-INCRIMINATION

E. WAS NEVER INFORMED OF ANY FORMAL CHARGES THAT WERE TO BE PLACED AGAINST HIM BY THE DEFENDANTS OR BY ANY OTHER PERSON.

COUNT 11) DEFENDANTS SEPERATELY OR IN CONCERT ACTED WILFULLY, KNOWINGLY, AND PURPOSEFULLY WITH SPICIFIC INTENT TO DEPRIVE PLAINTIFF OF HIS RIGHT TO

A) FREEDOM FROM UNLAWFUL ARREST.

B) FREEDOM FROM ILLEGAL DETENTION (COERCION,
TERROR.

C) THE TIMELY AND EFFECTIVE ASSISTANCE AND
ADVISE OF COUNSEL

D) FREEDOM FROM ILLEGAL SEARCH

6) AS A DIRECT AND PROXIMATE RESULT OF THE AFORESAID
ACTS OF THE DEFENDANTS AND EACH OF THEM, PLAINTIFF
SUFFERED BODILY PAIN AND INJURY, PSYCHOLOGICAL PAIN
AND MENTAL ANGUISH.

7) AS A DIRECT AND PROXIMATE RESULT OF THE AFORESAID ACTS
OF THE DEFENDANTS; THEIR CONSENTED UNLAWFUL AND MALICIOUS
PHYSICAL AND PSYCHOLOGICAL ABUSE OF PLAINTIFF, DEFENDANTS
INTENTIONALLY OR WITH DELIBERATE INDIFFERENCE AND CALLOUS
DISREGARD OF PLAINTIFFS RIGHTS, DEPRIVED PLAINTIFF OF HIS
RIGHTS TO EQUAL PROTECTION OF THE LAW, IMPEDED THE DUE
COURSE OF JUSTICE AND INFLICTED CRUEL AND UNUSUAL
PUNISHMENT.

8) AS A DIRECT AND PROXIMATE RESULT OF THE AFORESAID ACTS
OF THE DEFENDANTS: CONSENTED UNLAWFUL AND MALICIOUS
DETENTION OF PLAINTIFF, DEPRIVED PLAINTIFF OF HIS
LIBERTY WITHOUT DUE PROCESS OF LAW AND DEPRIVED
HIM OF EQUAL PROTECTION OF THE LAW.

9) BECAUSE PLAINTIFF MUST RETURN TO THE SAME COMMUNITY HE IS JUSTIFIABLY FEARFUL FOR HIS LIFE UPON RELEASE. WHEREUPON THE DEFENDANTS MAY CONTINUE THEIR REIGN OF TERROR AND BRUTALITY.

10) AS A DIRECT AND PROXIMATE RESULT DUE TO MALFEASANCE AND INJUSTICE DONE BY THE DEFENDANTS, CAUSING PLAINTIFF TO SUFFER FROM MENTAL, EMOTIONAL AND NERVIOUS DISORDERS, WAKING UP ALMOST EVERY NIGHT IN A COLD SWEAT DUE TO NIGHTMARES OF THIS EXPERIENCE WITH THE DEFENDANTS, BEING ON MEDICATION FOR PSYCHOLOGICAL PROBLEMS FROM SAID EXPERIENCE. THE NEED FOR PSYCHO THEARPHY FOR AN UNDERTMINED TIME.

11) THE FEAR THAT THE PLAINTIFF HAS HAD TO FACE DAILY AND IN THE FUTURE DUE TO THE THREATS IMPOSED BY THE DEFENDANTS

12) AT THIS TIME IT IS DIFFICULT TO DETERMINE IF PLAINTIFF WOULD BE ABLE TO EFFICIENTLY CONTINE HIS CAREER IN THE TRANSPORTATION INDUSTRY IN WHICH HE WAS GAINFULLY EMPLOYED AT THE TIME WHEN PLAINTIFF WAS VICTIMIZED BY THE DEFENDANTS.

SYLLABUS;

1.)

ON SUNDAY DECEMBER 5, 1999; FOUR DETECTIVES FROM AREA ONE DETECTIVES MATTHEWS, VAN BEVEREN, TRLAK AND ZALATORIS ARRIVED AT THE MALEK RESIDENCE 5434 So ALBANY AT APROX 1100 HOURS.

2) Richard MALEK RESPONDED AT THE DOOR.

3) DETECTIVES MATTHEWS AND DETECTIVE VAN BEVEREN PUT HANDCUFFS ON LOIS MALEK AND TRANSPORTED HER TO AREA ONE POLICE STATION 51ST STREETS AND WENTWORTH AVE.

4) DETECTIVES TRLAK AND ZALATORIS REMAINED BEHIND WITH MR MALEK AND INFORMED HIM THAT HIS WIFE LOIS WAS UNDER ARREST FOR MURDER.

5) THE DETECTIVES ALSO TOLD MR MALEK THAT WHILE HE WAS AWAY AT WORK (I WORKED BETWEEN 10-12 HOURS PER DAY) THAT LOIS'S X-HUSBAND WOULD COME TO OUR APARTMENT FOR VISITS, AND ALSO OTHER MEN WOULD VISIT. DETECTIVE TRLAK ASKED IF MR MALEK KNEW ANYTHING ABOUT THAT. I REPLIED THAT "I DID NOT KNOW NOR DID I BELIEVE IT."

6). ALSO DETECTIVE TRLAK TOLD ME THAT AT ONE TIME WHILE I WAS AT HOME THAT LOIS' X-HUSBAND TRIED TO DELIVER PIZZA'S TO OUR APARTMENT. I SAID THAT I REMEMBER THAT AND THAT I TOLD THE DELIVERY MAN THAT WE DID NOT ORDER ANY FOOD AND SENT HIM AWAY (I HAVE NEVER MET LOIS' X-HUSBAND AND DID NOT KNOW) THEY WERE ONE IN THE SAME PERSON).

7) Already Grieving the Death of Andrea; Now to be Told this just added to the Grief, pain and distress I was already feeling to learn that Lois was doing these things behind my back and lieing to ME all this time.

8) Than detective Zalatoris requested that I accompany him outside to search the garbage that I have thrown out. He did not have a search warrant, (Viloitation of my 4th amendment).

9) Detectives than told Mr Malek to accompany them to Area one police station to answer some questions. At this time Mr Malek requested to make a telephone call to his son Michael to inform him of what was going on and to arrange for a lawyer. (Mr Malek was denied counsel) Detective Trlak stating " It would not be necessary and that it would not take much time", Detective Zalatoris stated " It is only to investigate the case."

10) Mr Malek was not placed under arrest nor advised of his rights was not frisked or searched, handcuffed at this time

11) Mr Malek went voluntarly, in the spirit of apparent cooperation

12) Mr Malek was placed in the back seat of the police car and was transported to Area one police station 51st street & Wentworth Ave.

13) MR MALEK WAS NEVER INFORMED THAT HE COULD REFUSE OR THAT HE COULD DRIVE HIMSELF.

14) ONCE AT AREA ONE MR MALEK WAS PLACED IN INTERVIEW ROOM 201, (A SMALL WINDOWLESS ROOM WITH ONLY A METAL BENCH TO SIT ON) WAS LEF ALONE FOR APPORXIMATELY ONE HOUR WITH THE DOOR LOCKED.

15) DETECTIVES R TRLAK AND J. ZALATORIS THAN ENTERED THE ROOM AND BEGAN TO INTEROGATE MR MALEK. MR MALEK REQUESTED TO MAKE A TELEPHONE CALL TO ARRAINGE FOR COUNSEL, WAS AGAIN DENIED, MR MALEK WAS NOT GIVEN HIS RIGHTS

16) DETECTIVES TRLAK AND ZALATORIS CONTINUED TO INTEROGATE MR MALEK ABOUT ANDREA' DEATH. DETECTIVE TRLAK BEGAN THE INTIMIDATION AND THREATS, TRLAK STATING " I WILL BEAT YOU UNTIL YOU CAN NOT MOVE UNLESS YOU TELL ME WHAT I WANT TO KNOW, TELL ME THE TRUTH." MR MALEK REPLIED THAT HE WAS TELLING THEM THE TRUTH AND EVERYTHING THAT HE KNEW.

17) DETECTIVE PLAYED THE BAD COP AND DETECTIVE ZALATORIS PLAYED THE GOOD COP. AGAIN MR MALEK ASKED TO MAKE A TELEPHONE CALL TO GET AN ATTORNEY AND AGAIN WAS DENIED.

18) THIS TYPE OF INTERROGATION CONTINUED 3 MORE TIMES THAT AFTERNOON, EACH TIME MR MALEK REQUESTED THE USE OF THE TELEPHONE TO ACQUIRE COUNSEL AND WAS DENIED MR MALEK WAS NEVER ADVISED OF HIS RIGHTS. THE THREATS AND INTIMIDATION BECAME MORE INTENSE WITH EACH INTEROGATION.

19) DURING ALL THIS TIME THE FIRST DAY MR MALEK HAD NOTHING TO EAT AND ONLY TWO SMALL CUPS OF WATER TO DRINK, WAS NOT PERMITTED TO USE THE REST ROOM.

20) APROX 1900 HOURS DETECTIVES TALAK AND ZALATORIS TOOK MR MALEK FROM ROOM 201, PUT HANDCUFFS ON MR MALEK (BEHIND HIS BACK) MR MALEK BECAME TERRORIZED THINKING HE WAS TO BE BEATEN. INSTEAD THE DETECTIVES PUT MR MALEK INTO THE BACK OF THE POLICE CAR. AND TOOK HIM TO 11TH AND STATE STREETS. POLICE STATION, FOR A POLYGRAPH EXAMINATION.

21) F/I TOVAR CONDUCTED THE EXAMINATION. HE EXPLAINED THE PROCESS TO MR MALEK AND MR MALEK AGREED TO TAKE THE POLYGRAPH EXAMINATION.

22) IN THE OPION OF F/I TOVAR THERE WAS NO DECEPTION IN THE EXAMINATION. F/I TOVAR INFORMED MR MALEK OF THE RESULTS AND STATED " YOU WILL BE GOING HOME SOON.

23) MR MALEK REQUESTED TO USE THE REST ROOM AND WAS ALLOWED. MR MALEK WAS NOT HANDCUFFED NOR WAS HE ACCOMPANIED WHEN HE USED THE REST ROOM.

24). AFTER THE EXAMINATION MR MALEK WAS HANDCUFFED AND TRANSPORTED BACK TO AREA ONE.

25) Again Mr Malek was placed in Room 201, Mr Malek again Requested to arrange for an attorney, again He was Denied.

26) The door to Room 201 was closed and Locked, Lights were turned off. Alone in the dark with no sleeping arrangments, Mr Malek was forced to spend the Night at Area One.

27) Mr Malek was Handcuffed to the wall for the Night Mr Malek was unable to lie down and could not sleep.

28) Left alone in the dark Mr Malek became very frightened, already not having very much sleep nor anything to eat over the past 4-5 days. Mr Malek was emotionally upset and now in a state of confusion added the fear and terror He was now experiencing, not knowing if He would be harmed or allowed to go Home. Mr Malek had no one to turn to for Help or advice

29) Held incommunicado Did not know who He could trust.

Mr Malek was seized without Probable cause and without Warrant was Held against His will. Although Mr Malek went to Area One Voluntarily in the spirit of corporation an implication of obligation. While the apperance in itself was voluntary, was an awsome experience. for Mr Malek. Mr Malek concluded that He was not free to leave, nor was He told that He could terminate the investigation and leave.

30) Monday December 6, 1999; in the am detectives Talak and Zalatoris returned to the interogation room detective Zalatoris took the handcuffs off mr malek. mr malek again asked to use the telephone to arrange for a lawyer was denied again. mr malek also asked for something to drink detective Zalatoris gave mr malek a cup of coffee. mr malek was again left alone.

31). When detectives Talak and Zalatoris returned they started to interogate mr malek. mr malek was not given his rights mr malek again requested a lawyer and was told he could call later. Again the threats and intimadation.

32) Later that afternoon detectives returned, this time 4 detectives, detectives Talak, Zalatoris, Rolston and detective Coughlin.

33) Detective Rolston and Coughlin did the interogation mr malek was not given his rights nor was allowed to use the telephone as requested. Instead the questioning was more intense with more threats.

34) Detective Rolston stated " I will handcuff you to the wall and beat you until you tell me what I want to hear." mr malek in fear replied " I am telling the truth", telling them " I realy do not

KNOW WHAT HAPPENED, FOR I WAS AT WORK AT THE TIME, AND THAT I COULD NOT GET APPROPRIATE ANSWER FROM MY WIFE LOIS AS TO WHAT OR HOW THINGS WENT THAT DAY."

35) MR MALEK ASKED TO BE TOLD WHAT HAPPENED, BUT HIS QUESTIONS WENT UNANSWERED MR MALEK WAS AGAIN LEFT IN ROOM 201 ALONE HANDCUFFED TO THE WALL.

36) NEXT CAME DETECTIVES BOUDEAU AND SVILAR, AS THEY ENTERED ROOM 201, MR MALEK FEELING THAT HE WOULD BE BEATEN, WITH THE EXPECTION OF DANGER. BUT INSTEAD DETECTIVE SVILAR THAN STARTED TO INTEROGATE MR MALEK DETECTIVE BOUDEAU TOOK THE HANDCUFFS OFF, STATING "I DON'T KNOW WHO OR WHY SOMEONE WOULD HANDCUFF YOU LIKE THIS." (MR MALEK WAS NOT ADVISED OF HIS RIGHTS AT THIS TIME). DETECTIVE SVILAR BEGAN LIKE THE OTHERS THREATS AND INTIMIDATIONS. AGAIN MR MALEK ASKED TO USE THE TELEPHONE TO CALL HIS SON TO ARRANGE FOR AN ATTORNEY, AGAIN WAS DENIED. DETECTIVES' LEFT AND CLOSED THE DOOR OF ROOM 201.

37) DETECTIVE BOUDEAU RETURNED AND ASKED MR MALEK IF HE WANTED SOMETHING TO EAT. MR MALEK REPLIED "YES" AND ASKED FOR A CUP OF COFFEE. SHORT TIME LATER DETECTIVE BOUDEAU GAVE MR MALEK A SMALL McDONALDS HAMBURGER AND A SMALL ORDER OF FRENCH FRIES. AND A CUP OF COFFEE. MR MALEK WAS UPSET TO EAT ALL THAT HE WAS GIVEN.

38) A DETECTIVE THAN CAME INTO ROOM 201 WITH A CAMERA AND TOOK A PICTURE OF MR MALEK. THAN LEFT HIM ALONE AGAIN.

39) ABOUT AN HOUR DETECTIVES SVILAR AND BOUDEAU RETURNED AND INTEROGATED MR MALEK AGAIN. NOT SATISFIED WITH MR MALEK' RESPONSE THEY LEFT.

40) DETECTIVES ROLSTON AND COUGHLIN RETURNED, MR. MALEK WAS FEARFUL OF GREAT HARM, MORE QUESTIONING, MORE THREATS AND INTIMATION. AGAIN MR MALEK WAS NOT GIVEN HIS RIGHTS AND AGAIN MR MALEK REQUESTED AN TELEPHONE CALL TO ARANGE AN ATTORNEY DENIED AGAIN. MR MALEK DID NOT KNOW WHAT THE OFFICERS WANTED HIM TO SAY. THE DECTIVES WOULD NOT QUIT.

41) MR MALEK WAS FORCED TO SPEND A SECOND NIGHT AT AREA ONE POLICE STATION AGAINST HIS WILL. STILL MR MALEK WAS NOT TOLD THAT HE WAS UNDER ARREST OR THAT HE WAS FREE TO LEAVE.

42) LEFT IN ROOM 201 AGAIN WITH THE LIGHTS TURNED OFF MR MALEK AGAIN COULD NOT SLEEP. FROM TIME TO TIME SOMEONE WOULD COME TO THE DOOR AND TURN THE LIGHTS ON AND OFF BUT WOULD NOT OPEN THE DOOR.

43) Being Left alone in the dark Mr Malek was afraid to sleep, fear and terror growing by the minute, terrified with this level of psychological torment.

44) Tuesday December 7, 1999; At approximately 0730 Hours Detectives Coughlin and Rolston came to Room 201. Mr Malek requested to use the bathroom. Both Detectives Coughlin and Rolston escorted Mr Malek to the bathroom.

45) Mr Malek was escorted not back to Room 201, but to a small storeroom near the restroom. Mr Malek was seated on a chair with Detective Coughlin seated to his left and Detective Rolston standing in front of him. Only light in this storeroom came from a window.

46) The Detectives Rolston and Coughlin started to interrogate Mr Malek again, the use of threats and intimidation was more intense.

47) During this interrogation Mr Malek was hit on the Right side of his head a number of times by Detective Rolston.

48) Detective Rolston than produced a hand gun and threatened to shoot Mr Malek. Stating " I'm the one that shot that black nigger son of a bitch last week, the mayor gave me a citation for that one and I

Probley got a medal for shooting a low-life white trash bastard like you" Also stating " I will tell them that you tried to grab my gun and I had to shoot you in self-defense"

49) Mr Malek now feared for his very life. Stating " I am telling you the truth and don't know any more than what I have already told you."

50) Detective Rolston put the gun to Mr Malek's head and stated " I will shoot you right now if you don't tell me what I want to know" Mr Malek repeated " I don't know anything more"

51) Detective Coughlin " Just shoot him now". Detective Rolston than pulled the trigger on the gun!

52) Mr Malek's body began to shake uncontrollably, heartbeat became fantic, sweating and gasping for breath, mouth was dry, throat burned, chest ached, fought the overpowering urge to pass out, was completely out of control of his senses.

53) Detective Coughlin continued to interogate Mr Malek telling him how to answer the questions

54) This frightening psychological trauma left Mr Malek believing the he would not live very long.

55.) MR MALEK IS UNABLE TO RECALL HOW HE GOT FROM THE STORE ROOM INTO THE CALL ROOM.

56.) NEXT DECTIVES COUGHLIN, ROLSTON AND VAN BEVERN WERE IN THE CALL ROOM WITH MR MALEK, THE INTERROGATING CONTINUED DETECTIVE ROLSTON PUSHED A FILING CABINET AGAINST THE DOOR SO AS NO ONE COULD ENTER THE CALL ROOM.

57.) DETECTIVE COUGHLIN SAT NEXT TO MR MALEK AND DETECTIVE ROLSTON SAT IN FRONT OF MR MALEK, DETECTIVE VAN BEVEREN SAT AT A TABLE TO THE LEFT. DETECTIVE ROLSTON STILL HAD THE GUN, ALTHOUGH MR MALEK DID NOT SEE IT, BUT DETECTIVE ROLSTON KEPT HIS HAND IN HIS POCKET.

58) AGAIN DETECTIVE COUGHLIN BEGAN TO INTERROGATE MR MALEK, ASKING QUESTIONS THAN DICTATING TO MR MALEK AS HOW TO ANSWER THE QUESTIONS.

59) THIS INVOLENTARLY ORAL STATEMENT WAS DUE TO THE BRUTAL INTEROGATION OVER A PERIOD OF 3 DAYS. MR MALEK WAS SUBJECTED TO A PSYCHOLOGICAL TRAUMA, WHERE HIS WILL WAS BROKEN.

60) MR MALEK WAS THAN PUT BACK IN ROOM 201 AND LEFT ALONE, FEAR WAS SO INTENSE THAT MR MALEK COULD NOT STOP SHAKING.

61) NEXT DETECTIVES ZALATORIS AND ROLSTON ENTERED THE ROOM AND PROCEEDED TO QUESTION MR MALEK AGAIN

MR MALEK would only ANSWER, ANY QUESTION By GIVING HIS NAME, AND SOCIAL SECURITY # REPEATING EACH TIME A QUESTION WAS ASKED. THEY LEFT ANGERY.

62) NEXT DETECTIVE VAN BEVERN ENTERED ROOM 201 AND SHE TRIED TO CALM MR MALEK DOWN STATING " EVERYTHING WILL BE ALRIGHT NO ONE WILL HURT YOU ANY MORE" SHE THAN ASKED IF " DO YOU WANT TO CHANGE OR ADD ANY-THING TO THE ORAL STATEMENT." MR MALEK SAID " IT IS ALL LIES NOTHING LIKE THAT HAPPENED. THAN SHE LEFT.

63) ANOTHER ATTEMPT By DETECTIVES ZALATORIS AND COUGHLIN TO QUESTION MR MALEK. AGAIN MR MALEK WOULD ANSWER WITH HIS NAME AND SOCIAL SECURITY # TO ALL THAT WAS SAID TO HIM. BECOMING VERY ANGRY THEY LEFT.

64) AFTER ABOUT AN HOUR THE ASSISTANT STATES ATTORNEY CARTER AND DETECTIVE COUGHLIN RETURNED AND INFORMED MR MALEK THAT HE WAS UNDER ARREST AND THAN AND ONLY THAN MR MALEK WAS GIVEN HIS RIGHTS AND WARNINGS MR MALEK STILL ANSWERED ONLY GIVING HIS NAME AND SOCIAL SECURITY #.

65) AFTER ASA CARTER AND DET COUGHLIN LEFT. NEXT CAME DETECTIVE ROLSTON. HIS PRESENCE MADE MR MALEK TO BEGIN TO SHAKE AND PERSPIRE AGAIN, DETECTIVE ROLSTON AGAIN THREATENED MR MALEK STATING

"I WILL ARANGE TO HAVE YOU BEATEN AND EVEN KILLED WHILE YOU ARE IN JAIL, IF YOU TELL ANYONE THE EVENTS THAT WENT ON TODAY". MR MALEK JUST SAT THERE AFRAID TO SAY ANYTHING, HE COULD NOT MOVE JUST SHAKING WITH FEAR.

66) DETECTIVE ROLSTON THAN GRABED MR MALEK BY THE FRONT OF HIS JACKET, STOOD HIM UP AND PUSHED HIM AGAINST THE WALL. MR MALEK FELL AGAINST THE METAL BENCH AND HITTING HIS MOUTH, BREAKING A TOOTH IN THE PROCESS. ROLSTON THEN LEFT MR MALEK LYING ON THE FLOOR IN ABSOLUTE TERROR.

67) DETECTIVE COUGHLIN ENTERED ROOM 201 AND PUT HANDCUFFS ON MR MALEK TO TAKE HIM DOWNSTAIRS TO BE "BOOKED"

68) WHILE AT THE TOP OF THE STAIRS MR MALEK BEGAN TO TREMBLE, FEAR OVER TOOK HIM AGAIN. HE WAS AFRAID THAT HE WOULD BE PUSHED DOWN THE STAIRS. MR MALEK WALKED DOWN VERY SLOWLY HOLDING TIGHTLY TO THE RAILING WHILE DETECTIVE COUGHLIN BEHIND HIM.

69) DOWN IN THE HOLDING AREA MR MALEK WAS STRIP SEARCHED, WAS TOLD TO PUT HIS CLOTHS BACK ON AND THAN WAS FINGER PRINTED AND PHOTO TAKEN

70) THAN AND ONLY THAN WAS MR MALEK ALLOWED TO USE THE TELEPHONE. MR MALEK CALLED HIS SON AND TOLD HIM TO ARANGE TO GET AN ATTORNEY.

71) MR MALEK WAS THAN PLACED IN A CELL ALONE, THE CELL ONLY HAD METAL BUNKS, A TOILET, AND A SINK. IT WAS VERY COLD IN THE CELL. MR MALEK WAS THAN GIVEN A SANDWICH AND NOTHING TO DRINK. THE SINK WAS OUT-OF ORDER, HE COULD NOT EVEN GOT A DRINK OF WATER.

72) WITH FEAR + TERROR STILL GROWING MR MALEK HAD A VERY BAD NIGHT BELIEVING HE WOULD NOT LIVE UNTIL MORNING HE WAS UNABLE TO SLEEP

73) THE NEXT MORNING MR MALEK WAS TAKEN TO THE COOK COUNTY JAIL.

74) MR MALEK DID NOT GO BEFORE A JUDGE UNTIL DEC 9TH 1999, TO BE FORMALY CHARGED AND ABLE TO PLEAD NOT GUILTY TO THE CHARGES.

75) MR MALEK IS STILL IN COOK COUNTY JAIL IN AN MEDICAL DIVISION, HE IS STILL ON MEDICATION FOR HIS PSYCHOLOGICAL, EMOTIONAL AND NERVOUS DISORDERS. HE IS SEEING A PSYCHIATRIST ON A REGULAR BASIS. DUE TO THE EXPERENCE WITH SAID DETECTIVES.

76 AT NO TIME DID MR MALEK WAIVER ANY OF HIS RIGHTS, MANY TIMES MR MALEK TRIED TO INVOKE RIGHTS BUT WAS DENIED.

VI.   Relief:

State briefly exactly what you want the court to do for you. Make no legal arguments.
Cite no cases or statutes.

1) WHEREFORE PLAINTIFF, RICHARD MALEK, PRAYS AND DEMANDS FOR A JUDGEMENT AGAINST THE CITY OF CHICAGO ILLINOIS A MUNICIPAL CORPORATION OF THE STATE OF ILLINOIS FOR A SUM IN THE AMOUNT OF $2,000,000 DOLLARS. DEFENDANT CITY OF CHICAGO, AS A MATTER OF POLICY AND PRACTICE, HAS WITH DELIBERATE INDIFFERENCE FAILED TO SANCTION OR DISCIPLINE POLICE OFFICERS, INCLUDING THE DEFENDANTS IN THIS CASE, WHO ARE AWARE OF AND SUBSEQUENTLY CONCEAL VIOLATIONS OF THE CONSTITUTIONAL RIGHTS OF CITIZENS BY OTHER POLICE OFFICERS, THEREBY CAUSING AND ENCOURAGING POLICE, INCLUDING DEFENDANTS IN THIS CASE, TO ENGAGE IN UNLAWFUL CONDUCT.

2) WHEREFORE PLAINTIFF PRAYS AND DEMANDS FOR A JUDGEMENT AGAINST DETECTIVES J. ZALTORIS, STAR # 20919 AND DETECTIVE R TRLAK STAR # 20137 FOR THEIR CONCERTED UNLAWFUL AND MALICIUS DETENTION OF PLAINTIFF WITHOUT PROBLE CAUSE, DETECTIVES ZALTORIS AND TRLAK DEPRIVED PLAINTIFF OF HIS LIBERTY WITHOUT DUE PROCESS OF LAW AND DEPRIVED HIM OF EQUAL PROTECTION OF THE LAW, SUBJECTED PLAINTIFF TO LONG AND BRUTAL INTERROGATIONS, DEMANDS EACH OF THEM JOINTLY AND SEVERALLY COMPENSATORY DAMAGES IN THE AMOUNT OF $200,000 DOLLARS, AND FURTHER HE PRAYS

7

AND DEMANDS PUNITIVE DAMAGES AGANST DETECTIVES ZALTORIS AND TRLAK AND EACH OF THEM JOINTLY AND SEVERALLY DAMAGES IN THE AMOUNT OF $50,000 DOLLARS

3) WHEREFORE PLAINTIFF PRAYS AND DEMANDS FOR A JUDGEMENT AGAINST DETECTIVES, K. BOUDREAU STAR# 20435, W. SVLAR STAR # 20153 AND J. VAN BEVERN STAR# 20219, FOR THEIR CONCERTED UNLAWFUL AND MALICIOUS PSYCHOLOGIAL ABUSE OF PLAINTIFF, DETECTIVES K. BOUDREAU, W. SVLAR AND J. VAN BEVERN, INTENTIONALLY, OR WITH DELIBERATE INDIFFERANCE AND CALLOUS DISREGARD OF PLAINTIFFS RIGHTS, DEPRIVED PLAINTIF OF HIS RIGHT TO EQUAL PROTECTION OF THE LAW, IMPEDED THE DUE COURSE OF JUSTICE AND ENFLICTED CRUEL AND UNUSUAL PUNISHMENT IN VIOLATION OF PLAINTIFFS CONSTITUTIONAL RIGHTS, DEMANDS EACH OF THEM JOINTLY AND SEVERALLY COMPENSATORY DAMAGES IN THE AMOUNT OF $100,000 AND FURTHER HE PRAYS AND DEMANDS PUNITIVE DAMAGES AGAINST DETECTIVES K. BOUDREAU, W. SVLAR AND J. VAN BEVERN AND EACH OF THEM JOINTLY AND SEVERALLY DAMAGES IN THE AMOUNT OF $25,000 DOLLARS

4) WHEREFORE PLAINTIFF PRAYS FOR AND DEMANDS A JUDGEMENT AGAINST DETECTIVES L ROLSTON STAR# 20101, AND T. COUGHLIN STAR # 20938, FOR THEIR CONCERTED AND MALICIOUS PHYSICAL AND PSYCHOLOGICAL ABUSE

OF PLAINTIFF, ALSO THEIR BURTAL ASSUALT ON PLAINTIFF WITH DELIBERATE INDIFFERANCE AND CALLOUS DISREGARD OF PLAINTIFFS RIGHTS, DEPRIVED PLAINTIFF OF HIS RIGHTS TO EQUAL PROTECTION OF THE LAW. AND INFLICTED CRUEL AND UNUSUAL PUNISHMENT IN VIOLATION OF PLAINTIFFS RIGHTS DEMANDS EACH OF THEM JOINTLY AND SEVERALLY COMPENSATORY DAMAGES IN THE AMOUNT OF $500,000 AND FURTHER HE PRAYS AND DEMANDS PUNITIVE DAMAGES AGAINST DETECTIVES L. ROLSTON AND T. COUGHLIN EACH OF THEM JOINTLY AND SEVERALLY DAMAGES IN THE AMOUNT OF $100,000 DOLLARS,

5) WHERE FORE PLAINTIFF PRAYS AND DEMANDS A JUDGEMENT AGAINST DETECTIVES J ZALATORIS STAR# 20919, R. TALAK STAR# 20137, L. ROLSTON STAR# 20101, T. COUGHLIN STAR# 20938, K. BOUDREAU STAR# 20435, W. SVLAR STAR# 20153 AND J. VAN BEVEREN STAR# 20219, FOR THEIR UNLAWFUL CONSPIRACY, ACCOUNTABILTY IN FILING A FALS POLICE REPORT IN AN ATTEMPT TO COVER UP SAID CONSPIRACY, DEMANDS EACH OF THEM JOINTLY AND SEVERALLY COMPENSATORY DAMAGES IN THE AMOUNT OF $100,000 DOLLARS AND FURTHER HE PRAYS AND DEMANDS PUNITIVE DAMAGES AGAINST DETECTIVES, J. ZALATORIS, R. TALAK, L. ROLSTON, T. COUGHLIN, K. BOUDREAU, W. SVLAR AND J VAN BEVERN

AND EACH OF THEM JOINTLY AND SEVERALLY DAMAGES IN THE AMOUNT OF $50,000 DOLLARS.

6) WHEREFORE PLAINTIFF PRAYS THAT THE COURT GRANT REASONABLE ATTORNEY FEES AND COSTS AND SUCH OTHER AND FURTHE RELIEF AS APPEARS REASONABLE AND JUST

I declare under penalty of perjury that all facts given in the complaint are true and correct.

Signed this ___22___ day of _NOV_ , ___2001_

_Richard Malek_

_____

(Signature of plaintiff or plaintiffs)

_1999 009 3812_

(I.D. Number)

_DIVISION 9 1A_

_PO BOX 089002_

_Chicago, Illionis 60608_

(Address)

8